IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WHARF RETAIL PROPERTIES, LLC,    )
      Plaintiff,                )
                            )
vs.                            )        **CIVIL ACTION 1:22-00449-KD-B**
                            )
LANDMARK AMERICAN INS. CO.,    )
      Defendant.              )

## ORDER

This matter is before the Court on Defendant's motion for summary judgment (Docs. 78, 79), Plaintiff's Response (Docs. 87-88), and Defendant's Reply (Doc. 98).

## I.   <u>Findings of Fact</u>[1]

This case is about Hurricane Sally damage to commercial properties owned by Plaintiff Wharf Retail Properties, LLC (Wharf) and insured by Landmark American Insurance Company (Landmark). Specifically, on September 16, 2020, Hurricane Sally landed in Orange Beach, Alabama, where certain Wharf properties are located; namely, 4776 Main Street and 4649 Wharf Parkway, in Orange Beach, AL, properties insured by Landmark. These properties sustained hurricane damage at that time and so Wharf submitted a claim to Landmark.

---

[1] The facts are taken in the light most favorable to the non-movant. <u>Tipton v. Bergrohr GMBH–Siegen</u>, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

Wharf's insurance policy with Landmark provides as follows, in relevant part:

**A.      Coverage**
***

**2.       Property Not Covered**
Covered Property does not include:
***

g. Foundations of buildings, structures, machinery or boilers if their foundations are below: (1) The lowest basement floor; or (2) The surface of the ground, if there is no basement; …
***

m. Underground pipes, flues or drains.
***

**C.      Loss Conditions**
***

**2.  Duties in the Event of Loss or Damage**
***

…a … (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms …
***

**4.       Loss Payment**
***

… We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and: (1) We have reached agreement with you on the amount of the loss; or (2) An appraisal award has been made .…
***

**D.      Additional Conditions**
***

**1.       Coinsurance**
**…** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property. Instead, we will determine the most we will pay using the following steps:

> (1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;
> (2) Divide the Limit of Insurance of the property by the figure determined in Step (1);
> (3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

2

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself …

***

**E.     Loss Conditions**

***

**7.     Valuation**

***

 We will determine the value of Covered Property in the event of loss or damage as  follows:

    a.     At actual cash value as of the time of loss or damage …

***

(Doc. 4-1 (Sections A.2.g, A.2.m, C.2.a.7., C.4., D.1., and  E.7.a).

On October 20, 2020, Wharf submitted a <u>First</u> Sworn Statement in Proof of Loss to Landmark for Advance Payment Amount - $500,000, stating the actual cash value of property at time of loss "not determined."  (Doc. 91-2 at 2). Upon Wharf's submission of a claim, Landmark appointed an adjuster, who then coordinated with consulting experts to inspect the properties. Landmark paid Wharf the full amount requested **$500,000** -- without consideration of the policy's coinsurance provision. (Doc. 91-3 at 2; 91-4 at 3 (Dep. McHugh at 129)). On November 19, 2020, Wharf submitted a <u>Second</u> Sworn Statement in Proof of Loss for Advance Payment Amount as "Whole Loss and Damage" $2,431,074.82, but for the Full Amount Claimed as **$1,093,054.61** (after a $500,000 reduction of the sum paid by Landmark), stating the actual cash value of property at time of loss "not determined." (Docs. 91-6; 91-7; 91-4 at 3 (Dep. McHugh at 129)). On November 23, 2020, Landmark paid Wharf the full amount claimed -- **$1,093,054.61** -- without consideration of the policy's coinsurance provision. (Doc. 91-7). During Landmark's consideration of Wharf's claim, different reports were issued by different individuals and entities, addressing the amount of damage sustained to Wharf's properties' roofs, the properties

3

themselves, the properties' interior elevators, and more. Wharf disagreed with a number of the items in these reports, including the calculation methods and application of the coinsurance provision – notably as to an April 2023 report -- and its consultants later estimated a damages total of $9,720,329.22 for the relevant properties.

Almost two (2) years after Wharf's submission of a Second Sworn Statement Proof of Loss on September 13, 2022, Wharf submitted a <u>Third</u> Sworn Statement Proof of Loss for **$9,099,324.67** (Doc. 97-1 at 3) to Landmark, stating the "actual cash value" of property at time of the loss is "not determined." Then, two (2) days later, Wharf initiated this litigation in the Circuit Court of Baldwin County, Alabama against Landmark asserting **$9,720,329.22** in damages (Doc. 1-2) and claims for breach of contract and bad faith. (Doc. 1-2). On November 10, 2022, Landmark removed this case on the basis of federal diversity subject matter jurisdiction. (Doc. 1).

On November 30, 2023, Wharf and Landmark moved for summary judgment, and filed motions in limine to exclude each other's experts. (Docs. 67-71, 73-79, 81).  On December 19, 2023, Landmark sent an additional payment of **$306,619.13** to Wharf (per Landmark, the actual cash value of the damage to the properties less the coinsurance and deductible and crediting the $1,597,503.94 previously paid to Wharf (Doc. 91-5 at 4 (Aff. McHugh))).

On January 19, 2024, the Court held a <u>Daubert</u> hearing at which time the undersigned denied Wharf's motion for summary judgment; denied or found moot due to withdrawal, the motions in limine; and reserved ruling on Landmark's motion for summary judgment given the parties' scheduled February 2024 mediation. (Docs. 101-107). As the Court has recently been notified that the February 2024 mediation did not resolve the case, the undersigned turns to Landmark's pending motion for summary judgment.

## II.  **Standard of Review**

"Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Williamson v. Brevard Cty., Fla., 928 F.3d 1296, 1304 (11th Cir. 2019) (citing Fed. R. Civ. P. 56(a)). "The movant bears the burden of presenting pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any that establish the absence of any genuine, material factual dispute." Id. (citing Procaps S.A. v. Patheon, Inc., 845 F.3d 1072, 1079 (11th Cir. 2016) (citations and quotations omitted)). The district courts are "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013) (citation omitted).

If the non-movant bears the burden of proof at trial on the dispositive issue, the movant may meet its burden by pointing out the insufficiency of the evidence on an essential element of the non-movant's claims. Celotex v. Catrett, 477 U.S. 317, 325 (1986). The burden shifts to the non-movant who must set out specific facts, supported by the evidence, to show that a genuine issue exists. Id. at 324. If the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," movant is entitled to summary judgment. Id. at 323.

## III.  **Conclusions of Law**

## A.  **Breach of Contract**

Per Wharf, Landmark breached the insurance contract because it failed to properly adjust the hurricane damage loss and properly determine the causation and amount of this claim per the policy terms. Wharf argues Landmark improperly refused to pay damages *in full* because: 1) it rejected certain scope of damage and differing values on scope submitted by Wharf; and 2) it improperly applied a coinsurance penalty provision in the policy to reduce the coverage amount

(adjustment) based on a flawed valuation of the covered property. In sum, Wharf interprets the prior determination as an underpayment, construing such as a "denial" of the full amount due under the policy: "Landmark committed a material breach when it applied a coinsurance based on a faulty valuation in April of 2023. Making up a new valuation seven months later, and then waiting another two months to tender a payment based on that new valuation, does not somehow partially or fully cure Landmark's previous breach."

Per Landmark, there was no breach contract, and even though errors existed in calculating the initial coinsurance adjustment in April 2023, such did not constitute a breach. Moreover, Landmark argues that any errors were corrected in an October 2023 supplemental report and additional payment issued to Wharf in December 2023, and there were no other payment requests by Wharf after the request which prompted the April 2023 report. Landmark adds that to date, Wharf has never provided the required signed sworn proof of loss form containing the necessary actual cash value of the property at the time of loss (i.e., Wharf failed to satisfy a condition precedent (comply with a policy term) to then be in a position to argue breach).

For an Alabama breach of contract claim, a plaintiff must establish: 1) the existence of a contract, 2) plaintiff's performance under that contract, 3) defendant's failure to perform that contract, and 4) damages resulting from defendant's failure to perform the contract. The January 19, 2024 hearing made clear that the parties *vehemently* disagree on almost everything, particularly as to the foregoing elements -- who performed under the contracted, who failed to perform, and the amounts due based on the same (damages). The parties also *vehemently* disagree on *what* amounts remain due to Wharf under the Landmark insurance policy, *if any*, as well as *how* those amounts were calculated, and the propriety of the methods used by those *who* performed such

calculations. The hearing emphasized that these factual issues, which also involve credibility determinations and prompt the weighing of evidence, must be determined by the trier of fact and not the undersigned. Thus, because significant genuine issues of fact prevent summary judgment on Wharf's breach of contract claim, Landmark's motion as to this claim is **DENIED.**

**B.**   **Bad Faith – Normal and Abnormal**[2]

Wharf alleges both a normal and abnormal bad faith claim against Landmark regarding its failure to pay.  Specifically, Wharf alleges that Landmark acted in bad faith because it is in breach of contract, without reasonably debatable grounds, for denying Wharf's contractual claim for damages (by relying on the April 2023 valuation report) and that such supports normal bad faith failure to pay.  (Doc. 88 at 16). Per Wharf, its abnormal bad faith claim is established via: "Landmark's use of the 'valuation report' to establish its coinsurance penalty and significantly reduce the amount payable to WRP demonstrates an intentional or, at a minimum, a reckless failure to properly subject WRP's claim to appropriate cognitive evaluation or review."  (Doc. 88 at 17).

In contrast, Landmark argues that Wharf's reliance on the April 2023 valuation in support of bad faith is faulty because such wholly ignores Landmark's October 2023 supplemental report which corrected the alleged errors, and Landmark's $306,619.13 additional payment to Wharf in December 2023 based on said corrections. Landmark also asserts that it reasonably relied on the reports of its experts (and costs to repair) and paid Wharf promptly upon receipt of those figures, including paying additional sums when due. Per Landmark, Wharf's disagreement over the specific amounts due is not evidence of bad faith conduct, Wharf has not shown a legitimate reason for denial of its claim because there was never any denial, and what Landmark did was reasonable.

---

2 Wharf conceded summary judgment on its bad faith failure to investigate claim, so said claim is no longer in the case. (Doc. 88 at 13 at note 3).

A bad faith claim in Alabama requires that a plaintiff establish: 1) insurance contract between the parties and the defendant's breach; 2) an intentional refusal to pay the insured's claim; 3) absence of any reasonably legitimate/arguable reason for refusal (absence of a debatable reason); 4) insurer's actual knowledge of the absence of any legitimate/arguable reason; and 5) if intentional failure to determine the existence of a lawful basis is relied upon, a plaintiff must prove insurer's intentional failure to determine whether there is a legitimate/arguable reason to refuse to pay the claim. However, a normal bad faith claim fails as matter of law on summary judgment if the breach of contract claim remains viable (there exists a legitimate dispute -- if it is fairly debatable/genuine issues of fact exist). Additionally, an abnormal bad faith claim only survives summary judgment if a plaintiff produces substantial evidence showing the insurer: 1) intentionally/recklessly failed to investigate the claim; 2) intentionally/recklessly failed to properly subject the claim to cognitive evaluation/review; 3) created its own debatable reason for denying the claim; or 4) relied on an ambiguous portion of policy as a lawful basis to deny the claim. In sum, "Alabama courts limit bad faith claims to cases here the underlying breach of contract claim is so strong the plaintiff is due a directed verdict … if there is a genuine dispute of material fact on the breach of contract claim, the bad faith claim must fail. ... … a bad faith claim … cannot succeed if the evidence produced by either side creates a fact question with regard to the [breach of] contract claim.…" Allen v. USAA Cas. Ins. Co., 668 F.Supp.3d 1237, 1242 (N.D. Ala. Apr. 7, 2023) (internal citations and quotations omitted).

As noted *supra*, significant genuine issues of material fact exist regarding Wharf's breach of contract claim against Landmark. As a result, Wharf's bad faith claims fail as a matter of law and are **DISMISSED,** rendering Landmark's motion on this claim **MOOT.**

**IV.**   <u>**Conclusion**</u>

     Accordingly, for the reasons set forth *supra*, it is **ORDERED** that Landmark's motion for

summary judgment (Docs. 78, 79) on the breach of contract claim is **DENIED,** and Wharf's bad

faith claims are **DISMISSED** rendering Landmark's motion on this claim **MOOT.**

     **DONE** and **ORDERED** this the **27th** day of **February 2024.**

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**
