IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WHARF RETAIL PROPERTIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 1:22-00449-KD-B |
| | ) |
| LANDMARK AMERICAN INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

This matter is before the Court on the Joint Status Report filed by Plaintiff Wharf Retail Properties, LLC ("Wharf") and Defendant Landmark American Insurance Company ("Landmark"). (Doc. 166). On June 13, 2024, the parties were present for a post-trial hearing to interpret the jury's April 24 verdict (the "Jury Verdict" or "Verdict"). (See Doc. 155). The jury found that Defendant Landmark breached its insurance contract (the "Policy") with Plaintiff Wharf. (Id. at 1).[2] It also assigned a "total amount of covered damages" to each property covered under the Policy,[3] as well as the "total replacement value" ("TRV") of each property covered under the Policy "immediately before the loss occurred."[4] (Id. at 2–6). Both parties filed post-trial briefs interpreting the Verdict to arrive at differing proposed judgments. (Docs. 159, 160).

According to Wharf, the Court should decline to perform any coinsurance calculation by applying the Verdict's purportedly incorrect TRVs or any other TRVs, not deduct Landmark's

---

[1] This Amended Memorandum Opinion and Order amends the penultimate sentence of the Memorandum Opinion and Order entered earlier today.
[2] The jury replied "YES" to Question 1, "That Landmark American Insurance Company breached the insurance contract with Wharf Retail Properties, LLC." The jury then generally adhered to the command following Question 1, namely it "then answer[ed] Questions #2–31." (Id.).
[3] The jury assigned $0 in covered damages to the Ferris Wheel. (Id. at 6).

prior payments to it, and "instead enter judgment for $7,550,869.60, but in no case less than $6,605,370.43." (Doc. 160 at 1–2). Wharf also claims that it is entitled to prejudgment interest. (Id. at 12–13). Meanwhile, Landmark argues that the Policy unambiguously subjects Wharf's recovery to application of its coinsurance provision, that it is entitled to a $1,904,123.07 setoff for funds it previously paid Wharf, and that Wharf is not due prejudgment interest. (Doc. 159 at 2–3, 23–25). Landmark sums up the amount that it owes Wharf per the Verdict as $1,222,093.06. (Id. at 25). In other words, while there is no dispute that the Verdict mandates Landmark's civil liability, the parties disagree over the extent of Landmark's liability pursuant to the Verdict by several million dollars.

As discussed at the June 13 hearing, the Court deferred entering judgment on the Verdict pending the outcome of mediation, the results of which were due no later than July 30, 2024. On July 30, the parties advised that they "utilized the services of mediator Reggie M. Copeland to continue settlement discussions in an effort to resolve this matter post-verdict." (Doc. 166 at 1). However, the parties were unable to reach an agreement. (Id.). The last matter before the Court is therefore to enter judgment in accordance with the April 24 Jury Verdict. For the reasons set forth herein, judgment will be entered in the amount of **$1,745,061.58**.

## I.    The Verdict is Best Understood as a General Verdict with Special Written Interrogatories Under Rule 49(b)

A gating issue is ascertaining the nature of the Verdict under Rule 49.[5] "Categorizing a verdict as a general verdict, or as a special verdict under Rule 49(a), or as a general verdict with

---

[4] The Verdict lists "NDA"—meaning "no data available," (see Doc. 160 at 6 n.6)—for seven (7) buildings: East Coast Marine, Heron Pointe, Smokey's BBQ, the New Maintenance Building, the Management Office, the Blue Heron Garage, and the Ferris Wheel. (Doc. 155 at 4–6).

[5] In relevant part, the rule provides:

    (a) SPECIAL VERDICT.
        (1) *In General*. The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact. The court may do so by:

2

special written interrogatories under Rule 49(b) should be—but too often seems not—a simple matter." Mason v. Ford Motor Co., 307 F.3d 1271, 1274–75 (11th Cir. 2002). The Eleventh Circuit outlined the differences between the three as follows:

> A general verdict is a "verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions," Black's Law Dictionary 1555 (7th ed. 1999); it is a verdict by which "the jury pronounce[s] generally on all or any of the issues, either in favor of the plaintiff or in favor of the defendant," 89 C.J.S. Trial § 819 (2001).[6] In contrast, a Rule 49(a) special verdict is a verdict by which "the jury finds the facts particularly, and then submits to the court the questions of law arising on them." Id. § 820. With a special verdict, the jury's sole function is to determine the facts; the jury needs no instruction on the law because the court applies the law to the facts as found by the jury. See Portage II v. Bryant Petroleum Corp., 899 F.2d 1514, 1521 (6th Cir. 1990). And, the Rule 49(b) verdict providing for a general verdict coupled with answers to written interrogatories, is a hybrid of the general and special verdicts.
>
> Little difference may exist between answers to jury questions posed under Rule 49(a)— which yields special verdicts to which the court applies the law—and answers to written interrogatories under Rule 49(b) which are accompanied by forms for a general verdict. Each procedure focuses the jury on the facts that must be found to resolve the dispute. When Rule 49(a) is employed, the jury makes specific factual findings; and the judge makes the ultimate legal conclusions based on those facts. When Rule 49(b) is employed, the jury makes specific factual findings, and the jury itself applies the law to those factual findings to issue a general verdict. In contrast, when a typical general verdict is

---

(A) submitting written questions susceptible of a categorical or other brief answer;
(B) submitting written forms of the special findings that might properly be made under the pleadings and evidence; or
(C) using any other method that the court considers appropriate.
(2) *Instructions*. The court must give the instructions and explanations necessary to enable the jury to make its findings on each submitted issue.
(3) *Issues not submitted*. A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.
(b) GENERAL VERDICT WITH ANSWERS TO WRITTEN QUESTIONS.
(1) *In General*. The court may submit to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide. The court must give the instructions and explanations necessary to enable the jury to render a general verdict and answer the questions in writing, and must direct the jury to do both.
(2) *Verdict and Answers Consistent*. When the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers.

Fed. R. Civ. P. 49.
[6] The Ninth Circuit explained that while the Federal Rules of Civil Procedure "explicitly contemplate" special verdicts and general verdicts with interrogatories, they "implicitly contemplate common law general verdicts without interrogatories[]" and "imply that general verdicts do not involve factual findings but rather ultimate legal conclusions." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003).

employed, the jury is asked to articulate no factual findings other than the ultimate finding of which party wins.

Id. at 1274.

When the court instructs the jury on the law to be applied to its factual findings "as well as the requirement that the jury apply the law and render its verdict," the verdict form cannot be characterized as a Rule 49(a) special verdict. Id. at 1275; Jarvis v. Ford Motor Co., 283 F.3d 33, 56 (2d Cir. 2002) ("[Rule 49(a)] does not apply when, as here, the jury is required to make determinations not only of issues of fact but of ultimate liability."); see Portage II v. Bryant Petroleum Corp., 899 F.2d 1514, 1521 (6th Cir. 1990) ("If the written questions submitted to the jury were truly special verdicts, no instruction on the law, and certainly not one as detailed would have been given to the jury."). Here, the Court instructed the jury on the law to be applied, including the substantive law governing breach of an insurance contract,[7] as well as the parties' corresponding burdens of proof, and required that the jury use the instructions in deciding the case and that they fill in the Verdict form once they agreed on it. (See Doc. 161-2). Thus, per Mason, given that the jury received these charges and was tasked with ultimately deciding whether Landmark breached its insurance contract with Wharf, the Verdict cannot be characterized as a special one under Rule 49(a). See 307 F.3d at 1275 ("Both the court's instructions and the verdict form required the jury to perform the most essential function that marks a general verdict: to decide which party prevails.").

Questions 2–31 of the Verdict are properly construed as special interrogatories accompanying Question 1's general verdict. Asking only the amount of damages—while an issue of fact—"cannot transform a general verdict into one under Rule 49(b)." Turyna v. Martam Constr. Co., Inc., 83 F.3d 178, 182 (7th Cir. 1996) ("Although the amount of damages is an issue

---

[7] See 1 Ala. Pattern Jury Instr. Civ. 15.17 (4th ed. 2024).

4

of fact, this fact is specifically determined by the jury under a general verdict form."); Zhang, 339 F.3d at 1031 ("[I]n a general verdict the jury announces only the prevailing party on a particular claim, and *may announce damages*.") (emphasis added); Toney v. Sullivan, No. 25-3209-EFM, 2022 WL 1044920. At *2 (D. Kan. Apr. 7, 2022) (same). At first blush, therefore, the even-numbered questions in the Verdict form asking for the total amount of covered damages to each building, in conjunction with the Court's jury instruction, "If you decide that Wharf proved its claim against Landmark for breach of contract, you also must decide how much money will reasonably compensate Wharf for the harm caused by the breach," (Doc. 161-2), are arguably damages prompts that are characteristic of general verdicts.

A trial judge—subject to several devices, including remittitur and orders for a new trial[8]—must, in keeping with the Seventh Amendment, generally not substitute her judgment for that of the jury. See Bonura v. Sea Land Serv., Inc., 505 F.2d 665, 669 (5th Cir. 1974).[9] Therefore, again subject to the court's power to order a new trial or a new trial subject to the plaintiff agreeing to remit a portion of the jury's award, "[a] federal court has no general authority to reduce the amount of a jury's verdict." Johansen, 170 F.3d at 1328 ("The Seventh Amendment prohibits re-examination of a jury's determination of the facts, which includes its assessment of the extent of plaintiff's injury."). The upshot of these cases is that Landmark's request to deduct $1,904,123.07 from the jury's determination of the total amount of covered damages to the insured properties, in addition to its ask to apply the Policy's coinsurance provision discussed *infra*, appears violative of the Seventh Amendment at first glance. (See Doc. 159 at 23–24).

---

[8] When a court finds that a jury's award of damages is excessive, it may grant the defendant a new trial. Born of that authority is a federal court's power of remittitur, through which a court that believes the jury's verdict is excessive may order a new trial unless the plaintiff agrees to remit a portion of the jury's award. Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1328 (11th Cir. 1999).

5

However, while a general verdict is "a verdict by which the jury pronounces generally on all or any of the issues, either in favor of the plaintiff or in favor of the defendant," "an interrogatory containing multiple issues of fact cannot be characterized as a general verdict." Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1201 (11th Cir. 2004) (cleaned up). "If [the jury] makes factual findings in addition to the ultimate legal conclusions, it returns a general verdict with interrogatories." Zhang, 339 F.3d at 1031. Here, the Policy in evidence, to which the jury had access while deliberating, used the terms "loss" and "damage" interchangeably. (See, e.g., Doc. 162 at 7) ("In the event of *loss or damage covered* by this Coverage Form, at our option, we will either . . . .") (emphasis added).[10] Crucially, when the jury issued a "Note to the Court" form asking the Court for "better definitions" for "total replacement value (immediately before the loss occurred)" and "total amount of covered damages," the Court answered that the "replacement value immediately before the loss" "refers to what it would have cost to construct each building on September 15, 2020," while the "amount of covered damages" "refers to the damages to each building caused by Hurricane Sally." (Doc. 161-3).

The totality of the surrounding circumstances indicates that, in addition to deciding whether Landmark breached its insurance agreement with Wharf, the Verdict and the final jury instructions concerning it, as well as the Court's response to the Note to the Court form, required the jury to make 30 specific factual findings—the "total amount of covered damages" and "total replacement value" as to fifteen separate properties—making this a general verdict with interrogatories under Rule 49(b).[11] Cf. McVey v. Phillips Petroleum Co., 288 F.2d 53, 59 (5th

---

[9] Fifth Circuit decisions rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).
[10] The Policy was admitted at trial as Plaintiff's Exhibit 1.
[11] As counsel for Landmark argued in the post-trial hearing, "So the instruction to the jury, [y]our Honor, was for them to determine the total amount of the damages to each building, and that's what they did. And then they were asked to give a replacement value for each building, which is exactly what the jury did. . . . [T]hey didn't consider prior payments, and they weren't asked to consider prior payments in rendering their answers on the verdict form.

Cir. 1961) ("A special verdict must, of course, be constructed in the light of the surrounding circumstances, including the instructions of the court."). At bottom, the jury did not pronounce "the ultimate legal result of each claim" through Questions 2–31 of the Verdict. See 1 Fed. R. Civ. P., Rules and Comment. Rule 49 (Feb. 2024 Update) ("Ultimately, the key in determining whether a verdict is special or general is whether the jury announces the ultimate legal result of each claim.").

In Zhang, for example, the Ninth Circuit construed the verdict questions, "What total amount of [damages] [punitive damages] [lost wages] do you award?" to be general verdicts,[12] while the question "What amount of wages or benefits were willfully withheld during the period from the date of termination until September 29, 1999?" was a special verdict—that is, an interrogatory accompanying the general verdicts. 339 F.3d at 1031–32. Significantly, the latter question, prompting the jury to return a special verdict, "[left] to the trial court the duty to apply the law and determine that Zhang was entitled to double damages for all wages willfully withheld." Id. at 1032; see also Ratigan v. N.Y. Cent. R.R. Co., 181 F. Supp. 228, 232 (N.D.N.Y. 1960) ("It is settled that only questions of fact are to be put to the jury by the interrogatories, and the legal proposition is to be deduced from the answers by the Court."). Similarly, the Court here is left with the duty to apply the law consistent with the jury's interrogatories, which practically means it is obligated both to subtract $1,904,123.07 in prior payments before entering judgment and apply the Policy's coinsurance provision.[13] We presume that a jury follows the instructions given to it by the district court." Wilbur, 393 F.3d at 1201. It is not proper to deconstruct the sum of the Verdict's "covered damages" and read into that after the fact the assumption that the jury

---

They weren't asked to perform any coinsurance calculations. They weren't asked to do any of that. In fact, the Court was going to be doing that once we got the answers on the verdict form." (Doc. 165 at 7–8).
[12] A jury may return multiple general verdicts regarding separate theories of liability. See Mason, 307 F.3d at 1275.
[13] The latter issue is discussed in more detail in Part II of this Opinion.

deducted Landmark's previous payments and botched their attempt at applying the Policy's coinsurance formula when answering the written interrogatories. (See Doc. 160 at 2–4); cf. Burger King Corp. v. Mason, 710 F.2d 1480, 1489 (11th Cir. 1983) ("[T]rial judges are not empowered to fill in facts omitted from the answer to a special interrogatory."); see also Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1279 n.19 (3d Cir. 1979) ("[I]t is well accepted that a court will not inquire into the calculation methods employed by the jury during its deliberations.").

As Landmark and Wharf both admit in their post-trial briefs, "[t]here was undisputed testimony at trial that Landmark previously paid Wharf Retail $1,904,123.07 for covered damages that occurred as a result of Hurricane Sally." (Doc. 159 at 23; see also Doc. 160 at 2 n.4 (citing Doc. 157 at 72) (Q: "And, to date, is it accurate that Landmark has paid $1,904,123.07 to Wharf Retail?" A: "Yes.") and Doc. 158 at 249 (Q: "And, as has been indicated throughout these last couple of days, Landmark has paid about 1.9 million for those covered damages; correct?" A: "Yes.")). Landmark's seventh affirmative defense in its answer was that any recovery by Plaintiff must be reduced by the amount of Landmark's prior payments under the Policy.[14] (Doc. 4 at 15). Landmark raised the same affirmative defense in the Joint Pretrial Disclosures.[15] (Doc. 112 at 11). Thus, the defense was not waived. Cf. Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1012 (11th Cir. 1982) ("The failure to include an affirmative defense in the answer or

---

[14] "In responding to a pleading, a part must affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8(c). "The pleading of an affirmative defense is mandated by Federal Rule of Civil Procedure 8(c) to be presented in a responsive pleading, and a party waives its right to advance an affirmative defense by failing to assert it in such." Steger v. Gen. Elec. Co., 218 F.3d 1066, 1077 (11th Cir. 2003).

[15] "The joint pretrial document shall contain the information required by the forms adopted by the Judges of this Court." S.D. Ala. CivLR 16(c)(1). Per the Standing Pretrial Order Governing Final Pretrial Conference, the Joint Pretrial Document shall contain a list of the affirmative defense(s) asserted, and "[o]nce adopted by the Court as part of the Pretrial Order, the Joint Pretrial Document shall constitute the final statement of the . . . affirmative defenses . . . for trial." (Doc. 24-1 at 2, 4).

8

have it included in the pre-trial order of the district court, which supersedes in the pleadings, will normally result in waiver of the defense.").

"The general rule as to the measure of damages in breach of contract cases is that damages are recoverable which are the natural and proximate consequence of the breach, and it is that sum which would place the injured party in the *same condition he would have occupied if the contract had not been breached*." Brendle Fire Equip., Inc. v. Elec. Eng'rs, Inc., 454 So. 2d 1032, 1034 (Ala. Civ. App. 1984) (emphasis added). The Alabama Supreme Court held that when the defendant pled setoff and payment as an affirmative defense and the issue was severed from other issues at trial, the jury award—presumably a general verdict, no less—was permissibly reduced by the amount of the advanced payments after a post-judgment hearing. Keating v. Contractors Tire Serv., Inc., 428 So. 2d 624 (Ala. 1983); see also Martin v. Scaife, 587 So. 2d 995, 997 (Ala. 1991) ("[I]n *Keating*, this Court established the principle that a claimant is not entitled to a double recovery, unless, of course, the circumstances show an agreement to the contrary or there has been a waiver."). Landmark avoided a Lovelace v. Webster[16] situation by carefully raising and preserving the issue of crediting its prior payments as an affirmative defense. See also Keating, 428 So. 2d at 626 ("We agree with Plaintiff to the extent that claimant may have more than one recovery for the same injury, where the conduct of the parties invokes the doctrine of waiver, thus avoiding the offset or credit for payments made in advance of judgment. *But this is not the case before us*.") (emphasis added).

Alternatively, this issue can be viewed through the lens of Rules 49(b)(2) and 58(b)(2). Fed. R. Civ. P. 49(b)(2) obligates the court to "approve, for entry under Rule 58, an appropriate judgment on the verdict and answers" when the general verdict and special interrogatories are consistent, as was the case here. Rule 58(b)(2)(A) says that, subject to Rule 54(b), "the court

9

must promptly approve the form of the judgment . . . when the jury returns . . . a general verdict with answers to written questions." It would not be "appropriate" under the Alabama law of damages to enter judgment on the Verdict without subtracting the $1,904,123.07 that Landmark previously paid Wharf for losses covered under the Policy—or, for that matter, without applying the Policy's coinsurance provision, the effect of which is discussed below. See Sanders v. BNSF Ry. Co., No. 17-cv-5106 (ECT/JFD), 2022 WL 2339859, at *5 (D. Minn. June 29, 2022) ("Here, the jury returned general verdicts containing answers to written questions of fact. . . . Such a verdict is subject to court approval, Fed. R. Civ. P. 58(b)(2), and the judgment entered must be 'appropriate,' Fed. R. Civ. P. 49(b)(2). Nothing in the Federal Rules of Civil Procedure, or cases interpreting them, requires judgment to be entered on a verdict awarding punitive damages that exceeded a statutory cap.").

## II.    The Policy's Coinsurance Provision is Applied in Calculating a Final Judgment

Admitted at trial as Plaintiff's Exhibit 1, the Policy issued by Landmark to Wharf includes a coinsurance provision, which may limit the amount due under the Policy for any loss. (Doc. 162 at 9). At trial, Landmark moved for judgment as a matter of law on the issue of waiver/estoppel from its reliance on the Policy's coinsurance provision, which the Court granted. (Doc. 156 at 1). In other words, the Court ruled as a matter of law that Landmark did not waive and was not estopped from relying on the protection of the coinsurance provision to limit the amount that it owed under the Policy.

In addition, when discussing that issue during the April 24 jury charge conference, the Court found as a matter of law that the Policy's coinsurance provision applied *pending the jury's finding of each building's TRV immediately before the loss occurred*. The Court ruled during the

---

[16] 656 So. 2d 862 (Ala. Civ. App. 1995).

jury charge conference, "This is a contract and I am finding that you are bound under the coinsurance policy. I mean, as a matter of law, the coinsurance [provision] applies. If the values are below what they are supposed to be." "If the values are below what they are supposed to be" means if the jury's finding of the total replacement value of each property caused Wharf to be underinsured as to that property—or, in the Policy's parlance, if "the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations[17] is greater than the Limit of Insurance[18] for the property." (Doc. 162 at 9).[19] Indeed, the Court subsequently stated that it would "not . . . let the jury determine whether there's coinsurance or not." Rather, to account for Landmark's burden under Alabama law[20] to prove the existence of the *one* fact subject to reasonable dispute that would trigger the coinsurance provision's applicability, the Court included the jury instruction that "[i]t is Landmark's burden to show by a preponderance of the evidence that the replacement value was greater than the limits of insurance stated in the policy." (See Doc. 161-2 at 6).

> As Landmark explained in its post-trial brief,
>
> To apply the Landmark policy's coinsurance formula, the Value of Covered Property at the time of the loss and the total amount of the loss to each building must be established, both of which were determined by the jury. The other required items, such as the coinsurance percentage, the coverage limit of insurance, and the applicable deductible . . . are [all] found within the policy. Specifically, the policy's declarations page provides for a coinsurance percentage of 90% for all premises and buildings. [*Id.* at Wharf 001910]. The policy's "Schedule of Locations, Coverages and Limits" lists the coverage limit of insurance for each specified building or structure. [*Id.* at Wharf 001913–Wharf 001914]. Finally, the policy's "Deductible and Period of Restoration Endorsement" provides that for named storms, a deductible of 2% per building, subject to a minimum of $25,000.00 per occurrence, applies. [*Id.* at Wharf 001915].

---

[17] The coinsurance percentage for all buildings is 90%. (Doc. 162 at 5).
[18] The "Schedule of Locations, Coverages and Limits" depicts the "Limit of Insurance" for each of the 15 properties at issue. (Doc. 162 at 3–4).
[19] Counsel for Landmark put in this way during the jury charge conference: "[U]nder the policy, they are not considered underinsured unless they don't have coverage to 90 percent of the value."
[20] See, e.g., Acceptance Ins. Co. v. Brown, 832 So. 2d 1, 12 (Ala. 2001) ("In general, the insurer bears the burden of proving the applicability of any policy exclusion.").

11

(Doc. 159 at 4).

Wharf reads into the sum of the "total amount of covered damages" for the properties the assumption that the jury botched its attempt to apply a 10% coinsurance reduction on its own. (Doc. 160 at 2). Based off this assumption, Wharf says that "[a]ny award less than the $6,605,370.43 awarded by the Jury would be inconsistent with the Verdict, the Jury Instructions, the Jury's expressed intent and would violate Wharf's Seventh Amendment right to a jury trial on its claims." (Id. at 4). Of course, as noted *supra*, "[a] federal court has no general authority to reduce the amount of a jury's verdict." Johansen, 170 F.3d at 1328. Equally true, and as also noted *supra*, is the principle that "trial judges are not empowered to fill in facts omitted from the answer to a special interrogatory." Burger King, 710 F.2d at 1489. It is not the province of the Court to retroactively conclude that the jury applied a botched version of the Policy's coinsurance provision—when, while not instructed otherwise, the Policy in evidence, the nature of the Verdict form, and the Court's answers to the jury's questions in the Note to the Court form all indicate that the jury was to make special factual findings that did not account for any application of the coinsurance formula.

We are to "presume that a jury follows the instructions given to it by the district court." Wilbur, 393 F.3d at 1201. Wharf turns that presumption on its head by reading into the Court's *failure* to instruct the jury *not to apply coinsurance* the subsequent assumption that the jury must have attempted to do so on its own,[21] and then says that to not respect that assumption would violate Wharf's Seventh Amendment right to a jury trial on its claims. (Doc. 160 at 4). As

---

[21] Wharf argues, "These calculations demonstrate that the Jury applied a setoff for previous payments and attempted to apply coinsurance by simply reducing the total ACV claim by 10%. <u>Both plaintiff and Defendant presented evidence on the issue of coinsurance, made arguments relative to the application of coinsurance, and the Court did not instruct the jury not to apply coinsurance.</u> The Court specifically instructed the Jury that 'the damages you may award are limited by the policy.' (Jury Instructions, p. 5). There is no basis to assert that the Jury's $6,605,370.43 award did not include consideration for all Policy limitations that were in evidence, including coinsurance." (Doc. 160 at 4) (emphasis included).

counsel for Landmark explained during the hearing, "[w]e have no way of knowing" whether the jury attempted to apply the Policy's coinsurance provision when finding the total amount of covered damages as to each building, and to assume otherwise would be contrary to, *inter alia*, the Court's answers in the Note to the Court form. (See Doc. 165 at 5–8). Nothing in applicable Seventh Amendment case law dictates the result Wharf seeks here.

In summary, in keeping with the Court's prior rulings, it will apply the jury's special findings with the Policy's coinsurance provision[22] for the AMC Theater, Building F, Building G, Building K, Building L, Building M, and Building N,[23] while not applying any coinsurance penalty as to the remaining buildings, namely East Coast Marine, Heron Pointe, Smokey's BBQ, New Maintenance Building, Management Office, and Blue Heron Garage,[24] recognizing that Landmark failed to carry its burden of demonstrating that the coinsurance penalty applies to those properties, which it freely admits, (see Doc. 159 at 20).

### III. The Jury's Total Replacement Values

As referenced *supra*, the Policy's coinsurance formula may not be applied without inserting a "value of Covered Property at the time of loss." (Doc. 162 at 9). As Wharf points out, the TRVs from the Verdict "match the TRVs stated by Landmark's consultant Rob Senecal in his 2020 Report [the "2020 Senecal Report"] that was admitted [by Plaintiff] as *Plaintiff's Exhibit 56*." (Doc. 160 at 6) (emphasis added); (compare Doc. 155 with Doc. 162 at 86–93). At trial, Landmark employee Christine McHugh testified that the 2020 Senecal Report contained numerous errors, which ultimately caused Mr. Senecal to issue an updated report in October 2023 to correct those errors. (Doc. 157 at 83). According to Wharf, "Because the Verdict

---

[22] As explained, the other variables in the coinsurance formula, "such as the coinsurance percentage, the coverage limit of insurance, and the applicable deductible," are found within the Policy. (Doc. 159 at 4).

13

adopted undisputedly erroneous TRVs that Landmark has disclaimed, the Court should not use those TRVs to calculate a coinsurance penalty." (Doc. 160 at 8).

However, even assuming that the jury's reliance on the 2020 Senecal Report involved repeating computational errors that Mr. Senecal subsequently disclaimed, (see Doc. 160 at 7 n.9), applying coinsurance based on Landmark's "incorrect 2020 TRVs" does not require a new trial. (See id. at 8).[25] "New trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks the conscience." Hanes v. Greyhound Bus Lines, No. 03-CV-671-CG-C, 2007 WL 9712244, at *4 (S.D. Ala. Jan. 31, 2007), aff'd, 316 F. App'x 841 (11th Cir. 2008); cf. Indamer Corp. v. Crandon, 217 F.2d 391, 393 (5th Cir. 1954) ("[T]he rule is clear that an order denying a motion for a new trial, in a case where the *absolute absence of evidence* to support the jury's verdict makes such refusal an error in law, is subject to review by the appellate courts.") (emphasis added).

While trial judges may weigh the evidence when confronted with a motion for a new trial, the Eleventh Circuit has instructed them not to substitute their own "credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." Williams v. City of Valdosta, 689 F.2d 964, 973 n.7 (11th Cir. 1982). "The jury's verdict may be set aside on evidentiary grounds only if the verdict is against the great—not merely the greater—weight of the evidence. The jury's award of damages must likewise stand undisturbed unless the amount is shown to be clearly outside the universe of possible awards which are supported by the

---

[23] Because the finding of the "total replacement value of the Amphitheater immediately before the loss occurred" ($3,251,556) multiplied by 90% (=$2,926,400.40) is less than the coverage limit of insurance for the Amphitheater listed in the Policy ($3,000,000), **the coinsurance penalty does not apply to the Amphitheater**. (Doc. 159 at 19).
[24] As noted *supra* at n.2, the jury assigned $0 in covered damages to the Ferris Wheel. (Doc. 155 at 6).
[25] Wharf contends that because there is no evidence supporting the Verdict's TRV amounts, a new trial is required. (Id. at 15). However, "Wharf does not, by this or any other argument made herein, limit its potential grounds or arguments for a new trial following the Court's entry of judgment." (Id. at 13 n.11).

evidence." McGinnis v. Am. Home Mortg. Servicing Inc., 240 F. Supp. 3d 1337, 1341–42 (M.D. Ga. 2017) (internal quotations and citations omitted). The Court will not order a new trial on the issue of pre-storm property values, which were within the universe of possible awards supported by the evidence (*and were indeed introduced by Plaintiff at trial*), and instead applies the TRVs from the Verdict when calculating the effect of coinsurance as to each property.

### IV.     Wharf is Not Due Prejudgment Interest

Wharf prays for prejudgment interest to be applied at a rate of six (6.0%) percent on the final judgment amount from September 13, 2022, to the date the Court enters judgment. (Doc. 160 at 12). However, as Landmark correctly points out, Wharf is not entitled to recover prejudgment interest because the amount due under the Policy was not a liquidated sum. (Doc. 159 at 24). For the insured to be entitled to prejudgment interest under Alabama law, the amount due under the policy must be a liquidated sum. Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of N.Y., No. 07-CV-829-KD-B, 2009 WL 10692094, at *1 (S.D. Ala. June 4, 2009).

Liquidated damages are those that are "reasonably ascertainable at the time of breach, measured by fixed or established external standard, or by standard apparent from documents upon which plaintiffs based their claims." Id. (citing U.S. Fid. and Guar. Co. v. German Auto, Inc., 591 So. 2d 841, 843 (Ala. 1991)). When the damages "were not reduced to a certainty until the trial court entered its judgment," they were unliquidated. Caribbean I, 2009 WL 10692094, at *2. Just like in Caribbean I, because the damages due to Wharf were not reasonably ascertainable at the time of breach and are not reduced to a certainty until this Court's entry of judgment, Wharf is not due prejudgment interest.

15

## V. Amount of Judgment

The Court mostly agrees with Landmark's calculations of the total damages that it owes Wharf after applying the Policy's coinsurance provision and generally incorporates by reference its step-by-step calculations per building. (See Doc. 159 at 2–23). As discussed, Landmark is entitled to a setoff for its $1,904,123.07 prior payment to Wharf. However, incident to that, the Court disagrees with Landmark's subtraction of the per-building deductibles during its coinsurance calculations. Step four of the coinsurance formula is to subtract the deductible from the figure determined in the prior step. (Doc. 162 at 9). But a Landmark employee testified that the ~$1.9 million prior payment already accounted for the deductible(s):

> Q. And, as has been indicated throughout these last couple of days, Landmark has paid about 1.9 million for those covered damages; correct?
>
> A. Yes.
>
> Q. And can you explain if it's – – if it had been estimated at 3.3 why 1.9 has been paid?
>
> A. The 3.3 is the – – just the straight number of what it would cost to repair the damages that we found, and then we applied the depreciation, which is when you are going from replacement cost to that actual cash value. It applies – – *it also takes into consideration the deductible, which is applied,* and then also the coinsurance provision. [26]

(Doc. 158 at 249) (emphasis added). Though the Policy provides that for named storms, a deductible of 2% per building, subject to a minimum of $25,000.00 per occurrence, applies, the per-building deductible is a function of the coverage limit of insurance for that property, which is set out in the Policy's Schedule of Locations, Coverages and Limits. (See Doc. 159 at 4, 6). In other words, none of the jury's findings impact the deductible to be applied, and *which already was applied*. Because Landmark's prior payment already accounted for it, it would be unfair and

16

contrary to the Policy to give Landmark the benefit of the deductibles twice. Accordingly, the Court will enter judgment in favor of Wharf in the amount of **$1,745,061.58**, as depicted in the table below. The Court presumes that, besides not applying the deductible(s) twice, the only difference between its final value and Landmark's is that the Court did not round the values used in its coinsurance calculations.

| Building | Total Amount of Covered Damages | Amount Due After Coinsurance Calculation |
|---|---|---|
| AMC Theater | $ 1,465,731.69 | $ 904,582.01 |
| Building F | $ 1,658,608.51 | $ 753,136.60 |
| Building G | $ 694,884.97 | $ 321,405.49 |
| Building K | $ 287,333.62 | $ 130,084.27 |
| Building L | $ 605,712.47 | $ 279,420.56 |
| Building M | $ 518,521.58 | $ 243,826.76 |
| Building N | $ 668,463.48 | $ 310,614.84 |
| East Coast Marine | $ 96,438.41 | N/A |
| Heron Pointe | $ 16,513.43 | N/A |
| Amphitheater | $ 357,350.54 | N/A |
| Smokey's BBQ | $ 9,247.52 | N/A |
| New Maintenance Building | $ 1,981.61 | N/A |
| Management Office | $ 204,105.95 | N/A |
| Blue Heron Garage | $ 20,476.65 | N/A |
| Ferris Wheel | $ - | N/A |
| Total Damages After Coinsurance | $ 3,649,184.65 | |
| Less Landmark's Prior Payment | $ (1,904,123.07) | |
| Net Judgment Amount | $ 1,745,061.58 | |

**DONE** and **ORDERED** this **14th** day of **August 2024**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[26] The prior payment also accounted for the application of coinsurance. Of course, the jury's specific findings as to the "total amount of covered damages" and "total replacement value" of each covered building requires re-

application of coinsurance based off these new inputs.

18